Our last case this morning is Lodholtz v. York Risk Services Group. Mr. Rice. May it please the Court, Charlie Rice on behalf of Robert Lodholtz as assignee of Pulliam Enterprises. Judge Posner back in October in a related case wrote that this case has a long tail, so I'll eliminate the facts as I have very brief time today. Other than to say this case involves the question of what duty does a claims adjuster handling a third-party claim owe to the insured? And the important thing to realize here is the difference that Indiana has regarding a first-party claim and a third-party claim. And this goes back to what the Indiana Supreme Court said in the Erie insurance case. But you stand in the shoes of the first party here. So that distinction isn't implicated here. Even if it's valid, it's not in the case. Actually I disagree, Your Honor, for this reason. Because the first party, Pulliam, was being sued by a third party. And so the claim Right, but you're here on Pulliam's claim. Precisely. And for that reason, it's a third-party claim for this reason, if I may explain. That a first-party claim is when you are going to your insurance company under your insurance policy and saying, pay me for a claim. I either had a fire or my car was in an accident, I want to get it repaired. Or I want to have my health insurance paid. That's referred to under Indiana law as a first-party claim. A third-party claim is when you're an insured, you're sued by a third party, and you turn to your insurance company and say, I have a third-party claim, come defend me. And Indiana in the Erie case said that the relationship between the insured and the insurance company is a fiduciary relationship, where it's adversarial in that first situation where you're seeking to have the insurance company pay you money. In the context of the insured being sued by someone else, the third party, at that point the relationship between the insured and the insurance company becomes fiduciary. And so the claims cases, or the cases that the district court relied upon, all involve these first-party type claims, where the insured is saying to the insurance company, I was sick, my car was in an accident, my home burned down, pay me money. And so the claims adjuster in that situation is working for the insurance company because it's an adversarial relationship. The insurance company doesn't want to spend as much money as they need to in order to fix the car or rebuild the house. But in the situation in this case, Pulliam came to Granite State and said, I'm being sued, defend me. And Granite State appointed York and said, York, help Pulliam out. And at that point, there's a fiduciary relationship because the object of what Pulliam is seeking is not to get money from its insurance company, but defense of the third-party claim. And so in that context, there's a difference under Indiana law, under Erie, as the Supreme Court has said, that it becomes a fiduciary relationship, not adversarial. And so all of the cases relied upon by York and the district court, which involve first-party claims, are apples compared to the orange we have here, which is something different. And the cases which have looked at third-party type claims, where the duty to defend, not the duty to indemnify is invoked, those are a different animal. And in that situation, courts, and we've cited to the court in our briefs the minority position, but the minority position we cited to involves third-party claims, where the court says, yeah, the claims adjuster has a duty of reasonable care. And let me give you an analogy, because it's similar to the tripart relationship that you normally see with insurance defense counsel. The insurance company hires the lawyer who defends the insured. The lawyer has duties to the insured. Even though his contract for payment, his fee agreement is with the insurance company. And so the idea that you're hired by Granite State doesn't mean you don't have any duties to pull you, just as if there was a lawyer hired by Granite State. No, the attorney-client relationship has long been understood to be fiduciary in nature. The insurance company-insured relationship, even when the duty to defend is invoked, is not considered fiduciary. It is in Indiana, Your Honor, under Erie. Erie doesn't say that. As we pointed out- It says that there's a good faith obligation, but that's an implied contract obligation. It's not a fiduciary obligation. I'm going to refer the Court, in the interest of time, to the cites we have regarding Erie in our brief. And it is, because that's where you involve the needs and the reasonable expectations of the insured. Right. That's why there's a bad faith claim if an insurance company, in bad faith, declines to defend or indemnify. And actually, in this case, we've got the indemnification duty in play, not the duty to defend. Both, Your Honor, because it's out of the failure to defend that harm occurred. And if I may, one of the things that's important here is, remember the posture we're here on. We're here on a motion for judgment on the pleadings, which is similar to the standard for a motion to dismiss. Are there any set of facts where we would be, as plaintiffs, unable to recover? And one of the things we said is that, also, there is an assumption of a duty by York here. And the District Court, in its ruling, said, hey, I'm looking at the record. I don't see any evidence. But the Court stayed discovery. We never even got to have the contracts between Granite State and York. Yeah, the assumption of duty doctrine applies to the gratuitous assumption of a duty. And we don't have that here. We just have a series of contractual relationships. We never received the contracts, Your Honor. We never got past the pleading point, because the Court— That doesn't matter. I mean, it's clear that York is in the suit by virtue of a contract, which is pleaded, even if it's not attached, that it had with Granite State to administer claims against its insurance. Without looking at the contracts, Your Honor, I can't tell you what those contracts say regarding what York is supposed to do, and whether there's even a third-party beneficiary relationship. Right. My only point is that it's a contractual relationship. It's not the gratuitous assumption of a duty. It's not like they swooped in and said, okay, we're going to start representing you. Actually, we don't know, because we have to look and see what the contract says. That's not plausible. You know, we've got a plausibility standard now. I don't think you can make that argument plausibly here. Without the contracts, we can't tell what's in the contract and what was gratuitously assumed versus what was assumed by virtue of their contract with York. And finally, what I'm asking the court to do is unremand. Remand this to the trial court, and we did ask for the invocation of Circuit Rule 36 here. And the district court's already been reversed in the related proceeding, and we would like to have the district court, at this point, have a different court rule on the remainder of the claim. I'm going to save the rest of my time for rebuttal. Thank you. That's one minute, so you don't have to do it. Ms. Rowe. Good afternoon, Your Honors. May it please the court. The district court properly granted York's motion for judgment on the pleadings, because York did not owe Pulliam, Lotho's signee, or signer, I'm sorry, any duty of care. There are two complex contracts in play here. There's the insurance policy between Granite State and Pulliam, which, assuming coverage exists, and that's not been proven at this point, requires Granite State to defend Pulliam against third-party claims. And then the second contract, as this court has already noted, is between Granite State and York, and that involves the administration of claims against Granite State, and or Granite State's insurers. In this case, Lotho's argues that York had and breached its responsibility to make sure Pulliam wasn't defaulted in the state court action. But York never had that responsibility. York never had a duty to defend. It's not a party. It's a stranger to the insurance policy between Granite State and Pulliam. Right. The nature of the claim that's being asserted here is one of professional negligence. Essentially, they're arguing that a claims adjuster has the duty of professional care to the insurance company that hires it to represent its clients, I guess, is the nature of the claim. So that might be the claim they're asserting, but I think the district court got it right here when it said, you know, it's reading the tea leaves, and it's saying, what would the Indiana Supreme Court do? You know, there are Indiana Supreme Court cases. They're not directly on point in terms of the duty of a claims administrator, but there are Indiana Supreme Court cases that say an agent cannot be held liable for economic loss to anyone except the principal. And that's what we have here is economic loss. It's not Lotho's injury, which would be physical, personal injuries. It was Pulliam's injury. That is the insurer. And that would just be an economic loss. And when you read that, this court instructs that when the district court is trying to look at Indiana law and trying to determine what the Indiana Supreme Court would do, they should look at the lower court's decisions to see if there's any compelling reason, and only change if there's compelling reason to show that the lower court possibly got it right. In this case, we have the Troxell case. Granted, it's in a footnote. It wasn't critical holding in that case. But they do address the majority and minority positions, and they accept the majority view, which the majority view says claims administrators or adjusters do not owe a duty of reasonable care to an insured because their duty is to the insurance carrier that hired them. And if there's any, you know, if York did anything wrong in this case, and again I say if because we don't know. That has not been fleshed out. But it would be between Granite State and York. And there's no cross-claim in this case? There is no cross-claim in this case, but Granite State at this point has not yet been determined. I mean, there has been, Judge Posner's opinion has come out, but it's still in the process of seeking a petition for re-hearing on Bonk, so it's not a final decision at this point. And then at that point, Granite State can look at the evidence and see whether it wants to come after, under its contract with York, whether it wants to come after York. Again, the evidence has to be there. We think we have great defenses to that because we at all times acted on behalf of Granite State. And what Granite State was instructing us to do, that was our job. And when you look at the minority rationale, you have basically three cases in the minority view. Brown, from Oklahoma, which is the most recent one, a district court in Oklahoma has said, I don't believe Oklahoma would follow this. Brown looked at cases that were inapposite. They were talking about professionals, kind of like what we had here today about lawyers. It's completely different because there's a different set of scheme. That one was accountants that those cases were relying upon.  Then you have Morve and Continental. Continental in Alaska, and that's the one that is, I believe, a third-party case that he's talking about. But it was, its laws are very different. They actually allow in negligence claims, you can go above and beyond the policy limits. Indiana law does not allow that. And King, in the Florida case, in King, the court, that was critical to the court. The court said, your insurance laws are different than ours. And so, I don't think there's any reason to believe that Indiana Supreme Court would follow the Morve and Continental and Brown rulings. As far as the first-party versus third-party analysis, I think that's just a red herring in this case. None of the cases have used that as a consideration. And I think Mr. Lohos overstates Erie's analysis in this regard. Because all Erie does is, the case is completely different. All it's talking about at one point is it says, well, you know, insurance contracts are kind of interesting. They're unique contracts. Because at one hand, you can have, they can have this fiduciary relationship, and then they cite a case where it's talking about the attorney-client privilege applying between, you know, during a third-party claim against the insured, between the insurance carrier and the insured at that point. And then they talk, it could also be an adversarial one. I don't know that it really sets up this first-party versus third-party, and the court can't look to third-party cases, or first-party cases and third-party claims. In any event, the majority cases, there are three, at least three, that are third-party claims. In the same context as here, where somebody had sued the insured, and they wanted a defense and indemnification. And the majority, the minority cases of the three listed, there's one that is a third-party claim. The rest are first-party claims. So it just, it goes, the courts just simply don't see that as a consideration that they use. The logic applies, irrespective of whether it's in the first-party or third-party context. And so we asked this court to affirm the district court's decision, because there was no duty. And there was no duty assumed in this case. Again, it wasn't a gratuitous duty, and Granite State did not relinquish control of its obligations. Is there a reason to certify this question to the Indiana Supreme Court that the Court of Appeals' decision in Troxel really addresses this only in a footnote? You know, I thought about that when we first got this case in, when I first looked at it. But I really, I mean, it is a question of first impression under Indiana law, whether claims adjusters or insurance companies, for that matter, can be sued for professional negligence by their insureds, because, you know, the claims adjuster really has the authority delegated to it by the insurance company. So the legal principle is the same. That's a hard question to answer. I'm not, I'm not really sure, Your Honor. That's fine. I don't think the court can affirm the district court based on what's before it, just based on the law that we've cited in there. There simply just is no relationship. You know, York at all times acted on Granite State's behalf. To the extent something should have been done differently, Granite State should have instructed it differently. And if there's a question, it's an issue between those two parties, and not Mr. Lodeholtz. Thank you. The Court has no more questions. Thank you, Your Honors. Thank you. Mr. Rice? Thank you, Your Honor. Within ERIE, the Court uses the words fiduciary in nature. And that's a quote that's on, the discussion is between pages 518 and 520. That's 622 Northeast 2nd, 518, 520. What's important here is if the Court, and as I hear opposing counsel say, that it's really not clear under Indiana law what the effect is, then you employ the Webb v. Jarvis test, which is the three-part test where you look at the relationship, the foreseeable harm, and the public policy. And the public policy here is just because you're someone's agent doesn't mean you escape tort liability, because you also owe a duty to Granite State. You can be an agent and owe a duty to Granite State and to polio. And in this situation, this is tort law. It's not contract law. The fact that there's a disclosed principle doesn't immunize Granite State from any liability. My time is up. If there are any questions, I'd be happy to answer them. But thank you very much. It's been a long day for the Court, and I appreciate your attentiveness to this issue. Thank you. I thank both counsel. Thank you. The case is taken under advisement, and that concludes the calendar today. The Court will stand in recess.